# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| TYLER J. SHOUP, | ) |
| Plaintiff, | ) |
| v. | ) Case No. CIV-15-421-KEW |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security Administration, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Tyler J. Shoup (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the finding of this Court that the Commissioner's decision should be and is AFFIRMED.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or

impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

(10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on September 17, 1991 and was 22 years old at the time of the ALJ's decision. Claimant completed his high school education with vocational training as a welder. He has received his certification as a welder. Claimant has worked in the past as a fast food employee, loader and unloader at a lumbar yard, rock stacker, and manual laborer. Claimant alleges an inability to work beginning December 17, 2012 due to limitations resulting from low back pain due to a prosthetic leg and anxiety.

3

**Procedural History**

On December 27, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's applications were denied initially and upon reconsideration. On April 22, 2014, an administrative hearing was held before Administrative Law Judge ("ALJ") James Bentley in McAlester, Oklahoma. He issued an unfavorable decision on August 25, 2014. The Appeals Council denied review of the ALJ's decision on September 10, 2015. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform light work with limitations.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in (1) reaching an improper RFC; (2) finding at step five that Claimant could perform other jobs; (3) performing an erroneous credibility assessment; and (4) failing to fully develop the record.

4

**RFC Evaluation and Duty to Develop the Record**

In his decision, the ALJ found Claimant suffered from the severe impairments of mild facet hypertrophy and mild foraminal narrowing at L4, grade 1 anterolisthesis of L5 and S1 with probable left L5 pars defect, and status post right above-knee amputation. (Tr. 11). The ALJ determined Claimant retained the RFC to perform light work except that he required a sit/stand option, defined as a temporary change in position from sitting and standing, and vice versa, with no more than one changes in position every 20 minutes and without leaving the work station or affecting pace or production. (Tr. 13).

After consulting with a vocational expert, the ALJ concluded that Claimant could perform the representative jobs of storage facility rental clerk, parking lot attendant, reel assembler, and circuit board assembler, all of which the ALJ determined existed in sufficient numbers in both the regional and national economies. (Tr. 17). As a result, the ALJ determined Claimant was not under a disability from December 17, 2012 through the date of the decision. (Tr. 18).

Claimant first contends that the ALJ erred by not developing the record further by obtaining RFC assessments from consultative examiners and treating sources. "[R]esidual functional capacity consists of those activities that a claimant can still perform on

5

a regular and continuing basis despite his or her physical limitations." White v. Barnhart, 287 F.3d 903, 906 n. 2 (10th Cir. 2001). A residual functional capacity assessment "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts ... and nonmedical evidence." Soc. Sec. R. 96-8p. The ALJ must also discuss the individual's ability to perform sustained work activities in an ordinary work setting on a "regular and continuing basis" and describe the maximum amount of work related activity the individual can perform based on evidence contained in the case record. Id. The ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." Id. However, there is "no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question." Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). Accordingly, the administrative finding on a claimant's residual functional capacity need not be based upon an RFC espoused by a physician but must only be supported by the medical record. This Court cannot conclude that the ALJ failed to perform his obligation of developing the record by not obtaining further RFC assessments from medical professionals.

Claimant asserts that the ALJ's limitation for a sit/stand

option in the RFC does not adequately accommodate his partially amputated leg and associated phantom limb pain and pain as a part of the amputation itself. Claimant testified at the hearing that he could sit for about an hour at a time whereupon he must get up and stretch. (Tr. 33). Claimant also testified he could stand for about 30 minutes before having to either sit down or lay down. (Tr. 34). Additionally, the functional findings of the state agency physicians indicate Claimant could perform at the light exertional level. (Tr. 58-59, 68-69). This evidence fully supports the ALJ's sit/stand restriction and RFC assessment.

Claimant next contends the ALJ failed to consider the side effects of the medication which he is prescribed which includes Oxycontin. Claimant testified the medication makes him sleepy a lot. (Tr. 37). The ALJ noted the extensive narcotic pain medication which Claimant's physician prescribed and inquired whether he had ever talked about cutting it back to which Claimant responded "no, sir." Id.

In his decision, the ALJ found that Claimant had reported no side effects associated with the medication he was prescribed. (Tr. 360)("The patient reports tolerating medications well with no side effects. He is satisfied with this medication regimen and wishes to continue."). The ALJ was within his prerogative to take this medical record into consideration and weigh Claimant's

7

testimony at the hearing for its credibility in light of the record. Claimant also asserts the ALJ should have further developed the record by recontacting Claimant's treating physicians concerning the need for his medications and any resulting side effects. The record was adequately developed for the ALJ to draw the conclusions on this subject.

Claimant also suggests the ALJ erred by dismissing his low GAF scores. The ALJ recognized that Dr. Anitra S. Fay, who provided psychotherapy services on four occasions to Claimant assessed a GAF of 39 at each visit. (Tr. 12). He then specifically found that the "GAF score is merely a snapshot of an individual's level of functioning at a particular point in time and should not be solely relied upon to determine the severity of an individual's mental impairments." He then did not give the GAF scores "any significant weight" especially in light of Claimant's minimal mental health treatment. Id.

"The GAF is a subjective determination based on a scale of 100 to 1 of the clinician's judgment of the individual's overall level of functioning." Langley v. Barnhart, 373 F.3d 1116, 1122 n. 3 (10th Cir. 2004). The Tenth Circuit through a series of unpublished decisions has made it clear that the failure to discuss a GAF alone is insufficient to reverse an ALJ's determination of non-disability. *See*, Lee v. Barnhart, 2004 WL 2810224, 3 (10th

Cir. (Okla.)); Eden v. Barnhart, 2004 WL 2051382, 2 (10th Cir. (Okla.)); Lopez v. Barnhart, 2003 WL 22351956, 2 (10th Cir. (N.M.)). The foundation for this statement is the possibility that the resulting impairment may only relate to the claimant's social rather than occupational sphere. Lee, *supra* at 3. However, a GAF of 50 or less does suggest an inability to keep a job. Id. citing Oslin v. Barnhart, 2003 WL 21666675, 3 (10th Cir. (Okla.)). Specifically, the DSM-IV-TR, explains that a GAF 41 and 50 indicates "[s]erious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, inability to keep a job)." Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

An ALJ is required to consider all relevant evidence in the record. Soc. Sec. R. 06-03p. He is not, however, required to discuss every piece of evidence in the record. Clifton v. Chater, 79 F.3d 1007, 1009-10 (10th Cir. 1996). A GAF score may be of considerable help to the ALJ in formulating the RFC but it is not essential to the RFC's accuracy and "taken alone does not establish an impairment serious enough to preclude an ability to work." Holcomb v. Astrue, 2010 WL 2881530, 2 (Okla.)(unpublished opinion) citing Howard v. Comm. of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002). This Court finds the ALJ was under no legal obligation to

provide the GAF scores significant weight, in particular since Claimant sought only minimal treatment.

### Step Five Evaluation

Claimant contends the hypothetical questioning of the vocational expert by the ALJ was flawed because the RFC from which the questions were formulated did not include all of his limitations. Since this Court found the RFC to be accurate and the questions posed to the expert were consistent with the RFC, the ALJ's step five questioning and findings were supported by the record and the RFC.

### Credibility Determination

Claimant also challenges the ALJ's credibility findings. While the ALJ did employ somewhat generic boilerplate language in reaching his conclusions on Claimant's credibility, he did not stop his analysis. He proceeded through the medical evidence to point out the conflicts with the extensive limitations to which Claimant testified. Claimant testified that he suffered from back pain and leg pain and had difficulty with functional activities. (Tr. 14). Particularly, the ALJ found Claimant's amputation of his leg above the knee after a self-inflicted shotgun accident healed well and that both his back condition and leg amputation required only minimal and conservative treatment. (Tr. 14-15). The ALJ accounted for Claimant's restrictions through the sit/stand option

and the limitation to light work. (Tr. 16).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

The ALJ relied upon appropriate factors in evaluating the credibility of Claimant's statements. The nature of Claimant's

11

treatment, the objective medical testing, and the inconsistencies between the claimed restrictions and Claimant's activities all form specific and legitimate reasons for the ALJ's questioning of Claimant's credibility.[2]

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, this Court finds the ruling of the Commissioner of Social Security Administration should be and is **AFFIRMED**.

IT IS SO ORDERED this 29th day of March, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE

---

[2] Since the ALJ's decision in this matter, the Social Security Administration has revised its rulings on evaluating statements related to the intensity, persistence, and limiting effects of symptoms in disability claims - what heretofore has been known as "credibility" assessments. Soc. Sec. R. 16-3p, 2106 WL 1119029 (March 16, 2016), superceding Soc. Sec. R. 96-7p, 1996 WL 374186 (July 2, 1996). However, nothing in the regulation or the law requires retroactive application if this Court is not remanding the decision for further consideration on any other issue.